# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| THOMAS McCLAIN GUINN, | ) | |
|---|---|---|
| Petitioner, | ) | Case No. 7:20cv00306 |
| v. | ) | **MEMORANDUM OPINION** |
| MELVIN DAVIS, WARDEN, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Respondent. | ) | |

Thomas McClain Guinn, a Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2012 convictions for grand larceny, statutory burglary, and perjury in Pittsylvania County, for which he received a sentence of 25 years, with all but six years suspended. The respondent, Warden Melvin Davis, has filed a motion to dismiss. After reviewing the record, the court concludes that respondent's motion must be granted, and Guinn's petition must be dismissed as time barred.

## I. Factual Background and Procedural History

On December 12, 2011, a Pittsylvania County grand jury indicted Guinn for statutory burglary in violation of Virginia Code § 18.2-91, grand larceny in violation of Virginia Code § 18.2-95, and perjury in violation of Virginia Code § 18.2-436. CCR[1] at 7–9. On January 12, 2012, Guinn pleaded guilty to all three charges in Pittsylvania County Circuit Court. At the

---

[1] Citations herein to the Circuit Court record of the criminal proceedings in Pittsylvania County will be to "CCR," using the typed page numbers in the bottom right corner of each page. Citations to the record of the habeas proceedings will be to "Habeas R.," also using the page numbers in the bottom right corner of each page. Citations to the record from the Virginia Court of Appeals will be to "VCOAR," using the page numbers on the lower left corner of each page.

hearing, the Commonwealth Attorney summarized the facts of the case, as follows. On July 29, 2011, someone broke into Caramie Cox's home in Pittsylvania County. Ms. Cox was out of town, but her father was coming by the home several times a day to let the dogs out. When he came the afternoon of July 29, he noticed that the 50-inch flat screen television was missing, and he found Guinn's North Carolina driver's license on the living room floor, which had not been there that morning. Guinn is Cox's half-sibling and had been staying at Cox's home until two weeks before the burglary, when she found crack cocaine in the home. As a result, Cox asked Guinn to leave. When Cox returned from her trip, she reported the burglary; in addition to the television, she noted that a laptop computer and two video-game systems were also missing. CCR at 154–156.

Deputy McKinney of the Pittsylvania County Sheriff's Office took Ms. Cox's statement and later recovered the laptop from a local pawn shop. The owner of the pawn shop told police that Guinn owed him money and had given him the laptop as collateral until he could repay the loan. He also identified Guinn from a photo lineup. *Id.* at 156.

On August 16, 2011, Investigator Johnson of the Pittsylvania County Sheriff's Office received information from the Carteret County Sheriff's Office in North Carolina that North Carolina had an arrest warrant for Guinn for grand larceny from an employer. Investigator Johnson and Deputy Abbott went to the residence where Guinn was staying and asked if he would speak to them at a local recreation center. Guinn agreed to do so. Apparently unbeknownst to Guinn, the officers recorded the ensuing conversation. Guinn denied knowing anything about the break-in at Cox's house. He denied taking the television and gaming equipment. He also told the deputies that he had slept on the couch when he was

living there and used to put his driver's license on the floor under the coffee table at night because he did not have a wallet. Although Guinn admitted using the laptop as collateral for a loan, he claimed that Ms. Cox had given him permission to do so. He agreed to take a polygraph examination if the officers wanted him to do so. The officers then told him about the charges from North Carolina regarding a cell phone and car keys that belonged to the employer, and Guinn admitted having those items back in North Carolina, saying he had just forgotten to turn them in when he quit the job. Habeas R. at 28–35.

Investigator Johnson told Guinn that Deputy Abbott would call North Carolina and see if they still wanted Guinn arrested and, if not, that he would take Guinn back home. But the assistant District Attorney in North Carolina indicated that she would request an extradition warrant for Guinn, so the officers arrested him on the outstanding North Carolina warrant. *Id.* at 28, 34.

On August 18, 2011, Deputy McKinney signed a criminal complaint and appeared before a magistrate to request warrants against Guinn for grand larceny and statutory burglary. CCR at 1–6. Once arrested on those warrants, Guinn's preliminary hearing was scheduled for October 31, 2011. *Id.* Investigator Johnson sent a memo to someone in North Carolina on August 25, 2011, advising that Guinn had been arrested on charges in Virginia, so an extradition warrant—which still had not been received—could not be acted on as promptly as he had hoped. Habeas R. at 26–27. Apparently, North Carolina did not issue an Order for Arrest until September 12, 2011. Petitioner's Br. in Rebuttal at 19, ECF No. 26.

Before the preliminary hearing, Guinn sent three letters to Ms. Cox, asking her to drop the charges, not to come to court, or send a notarized statement that she had given him

permission to use the laptop. Those actions led to the direct indictment for committing or suborning perjury. CCR at 157.

The day before the scheduled trial in Circuit Court, Guinn contacted the Sheriff's Office and admitted for the first time that he committed the burglary and larceny. He also implicated another individual and hoped to receive credit for his cooperation. At the time of his sentencing, however, the Commonwealth's Attorney indicated that Guinn was not a reliable enough witness for a case to be made against the other person. *Id.* at 165.

At the guilty plea hearing, the clerk arraigned Guinn as follows:

> Mr. Guinn, you stated [sic] indicted for a grand larceny, statutory burglary with intent to commit assault and battery, and perjury. How do you plead, guilty or not guilty?

*Id.* at 145. Guinn responded "Guilty." At that point, the prosecutor interrupted to correct the clerk, saying Guinn was indicted for statutory burglary with intent to commit larceny, not intent to commit assault and battery. Upon closer examination, the body of the indictment charged that Guinn "Did unlawfully and feloniously break and enter the dwelling house of Caramie Cox with the intent to commit larceny therein" on July 29, 2011. *Id.* at 7. However, the caption read "INDICTMENT FOR STATUTORY BURGLARY WITH INTENT TO COMMIT ASSAULT AND BATTERY." *Id.* In a dialog with counsel, the court asked if "your client understands" that the charge is burglary with the intent to commit larceny, and counsel said yes. The court then said, "All right, so with that the plea is still guilty?" Counsel again answered affirmatively. *Id.* at 147. At the Commonwealth's request, the court then agreed to amend the caption of the indictment, noting, "It's just a heading. It's not the actual indictment

but the heading is mislabeled so we'll correct that to, to read intent to commit larceny . . ." *Id.* at 148.

Thereafter, the court placed Guinn under oath to ask him questions about his pleas of guilty "to these three charges." *Id.* The court referenced a form that Guinn completed with his attorney, captioned "Questions of an Accused who is Pleading Guilty or Nolo Contendere." Guinn acknowledged that he could read the form, that his attorney had read it to him, and that the answers the attorney wrote on the form were Guinn's true and correct answers. The court then asked Guinn each question again, in open court, and Guinn gave the same responses that he had provided on the questionnaire. *Id.* at 149–154. One of those questions was whether Guinn understood that the maximum punishment "for these three offenses" could be 50 years in prison. *Id.* at 152; Habeas R. at 72. Another was if he was entirely satisfied with his attorney's services. *Id.* Guinn responded affirmatively to both questions. After a summary of the evidence, the court accepted Guinn's plea and ordered a presentence report.

On February 15, 2012, following consideration of the presentence report, victim impact statement, and evidence from the parties, the court imposed sentences of 10 years, all suspended, for burglary; 10 years, with five suspended, for larceny; and five years, with four suspended, for perjury. The sentences were to run consecutively, for a total of six years to serve and 19 years suspended, conditioned on three years of supervised probation and 20 years of good behavior. Id. at 42–44.

The day after sentencing, Guinn filed a motion to reduce his sentence, which the court denied the same day. Guinn appealed to the Court of Appeals of Virginia, contending that the trial court erred in sentencing him to six years of active time even though he had "cooperated

with the Commonwealth," and that the sentence violated the Eighth Amendment's prohibition of cruel and unusual punishment. The court denied his appeal on August 8, 2012. VCOAR at 32–33. Guinn's petition for appeal to the Supreme Court of Virginia was refused on February 15, 2013, and his petition for rehearing was denied on April 26, 2013. VCOAR at 37–38. Guinn did not file a petition in the United States Supreme Court.

No further legal action occurred in Guinn's case until November 29, 2017, when Guinn filed a motion to correct an unlawful sentence; the Circuit Court denied that motion on December 6, 2017. The Court of Appeals of Virginia denied his appeal on January 15, 2019, and denied his request for rehearing on February 21, 2019. Guinn filed a state petition for habeas corpus in the Pittsylvania County Circuit Court on October 18, 2018, alleging one claim for ineffective assistance of counsel and 12 claimed *Brady*[2] violations of due process, most of which are raised in the § 2254 petition presently before this court. By opinion dated December 7, 2018, the court denied his petition. His appeal to the Supreme Court of Virginia was summarily refused on August 27, 2019, and the Supreme Court noted that it found no error in the judgment below.

Guinn placed the current § 2254 petition in the prison mail on May 29, 2020, and it was received by the Clerk on June 1, 2020. Guinn raises the following issues in this petition:

A. Ineffective assistance of counsel:

1. Counsel failed to investigate the case properly and determine that the law enforcement officers paid the informant with a rock of crack cocaine;

2. Counsel failed to subpoena the informant as Guinn had requested;

---

[2] *Brady* violations are named after *Brady v. Maryland*, 373 U.S. 83 (1963) (recognizing a prosecutor's constitutional duty to disclose potentially favorable evidence in its possession to the defendant before trial).

3. Counsel failed to examine police files and listen to Guinn's statement to police, even though he knew that Guinn had made statements; and

4. Counsel failed to investigate Guinn's assertion that the informant was the one who burglarized Cox's home.

B. *Brady* violations:

1. The Commonwealth failed to disclose that the informant received a rock of crack cocaine for his information, which was exculpatory impeachment information;

2. Investigator Johnson violated Guinn's due process rights by failing to provide *Miranda*[3] warnings before questioning him;

3. The Commonwealth failed to disclose that the interview conducted by Investigator Johnson and Deputy Abbott was recorded and failed to provide a copy of the recording to the defense;

4. The Commonwealth failed to disclose information regarding Investigator Johnson's improper handling and disposal of rock cocaine;

5. Investigator Johnson and Deputy Abbott arrested Guinn in bad faith because no fugitive warrant had been issued from North Carolina, and this was used as a subterfuge to keep Guinn in custody until they could gather evidence on the burglary charges in Virginia;

6. The Commonwealth failed to disclose that Deputy McKinney altered and erased portions of the recorded interview between Johnson, Abbott, and Guinn;

7. The Commonwealth denied Guinn's Sixth Amendment right to confront and cross-examine witnesses against him by failing to subpoena the informant for trial;

8. The Commonwealth failed to disclose that the transcript of the recorded interview had been altered to refer to a rock "thing" instead of rock "cocaine;" and

9. Guinn's rights were violated because he was not told that he could plead "no contest" instead of guilty or not guilty, and his attorney said the plea to the burglary indictment, as amended, would remain guilty, but Guinn did not plead guilty to it.

---

[3] *Miranda* warnings are the prophylactic warnings that officers are required to give to suspects prior to custodial interrogation, first recognized in *Miranda v. Arizona*, 384 U.S. 436 (1966).

## II. Standard of Review and Limitations on Federal Habeas

Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Congress also placed a one-year statute of limitations on when a petition may be filed. Finally, a federal district court reviewing a § 2254(a) petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The statute of limitations, standard of review, and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

## III. Timeliness

Under 28 U.S.C. § 2244(d)(1), a petitioner has one year to file a federal habeas corpus petition. The statute of limitations runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 .S.C. § 2244(d)(1).

A. **One-Year Statute of Limitations**

Clearly, Guinn's petition was not filed within the time required by subsection (A). When the Supreme Court of Virginia denied Guinn's petition for review on April 26, 2013, he had 90 days to petition the United States Supreme Court for certiorari. The 90 days expired on July 25, 2013, and the one-year statute of limitations began to run on that date, expiring on July 25, 2014.

Guinn contends that he discovered new evidence, triggering subsection (D) above, when he received material on September 24, 2018, in response to his request under the Freedom of Information Act ("FOIA"), and that the state habeas petition he filed on October 18, 2018, less than a month later, should toll the statute of limitations, based on 28 U.S.C. § 2244(d)(2). He also claims that his discovery of the information was obstructed "by affirmative acts of misrepresentation and fraud" by the prosecutor and law enforcement officers. For the reasons explained below, however, Guinn is mistaken.

Guinn alleges the government suppressed information about the officers' conduct, the existence of the recorded statement, that the recording had been transcribed incorrectly on purpose, and that the recording had been erased and altered, all of which the government had a duty to produce and disclose pursuant to its discovery obligations under *Brady* because the

- 9 -

information could be used to impeach the officers. The requirement for the government to produce potentially exculpatory evidence to the defense before trial is a "*trial* right. . . . and exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty. . . . When a defendant pleads guilty, those concerns are almost completely eliminated because his guilt is admitted." *United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010) (emphasis added). The Supreme Court has held that the Constitution does not require the Government to disclose material impeachment evidence to the defendant before the defendant pleads guilty. *United States v. Ruiz*, 536 U.S. 622, 633 (2002). Because Guinn chose to plead guilty rather than have a trial, the Commonwealth had no constitutional duty to provide *Brady* information to him, and the alleged failure to do so cannot be considered obstruction.

Subsection (D) applies when new *facts* are learned that *could not have been discovered earlier* through due diligence. Evidence does not qualify as new if it was always within the reach of prisoner's personal knowledge or reasonable investigation. *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018), *cert denied*, 139 S. Ct. 2714 (2019); *Rowe v. Clarke*, No. 7:18CV00383, 2019 WL 4235240 (W.D. Va. Sept. 6, 2019). Knowledge of how the law might apply to those facts is irrelevant; the factual basis of the claim is what must be new. The time limit set forth begins to run under subsection (D) when the prisoner knows (or could have discovered through due diligence) the important facts, not when he recognizes their legal significance. *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000); *cf. Whiteside v. United States*, 775 F.3d 180, 183 (4th Cir., 2014) (en banc). To determine timeliness of Guinn's claims under subsection (D), the court must

determine when Guinn knew, or should have known in the exercise of due diligence, the essential facts underlying each claim.

1. <u>Ineffective Assistance of Counsel</u>

Guinn first alleges that counsel failed to investigate the case properly and determine that the law enforcement officers paid the informant with a rock of crack cocaine. The materials attached to the habeas petition herein (or in state court) do not support these allegations. The only reference to drugs in the reports Guinn says that he received in response to his FOIA request is in the transcript of Guinn's conversation with Johnson and Abbott—specifically, when Johnson asks "How are you supporting your habit? You know that little tube we took away from you, how are you supporting that habit?" Habeas R. at 33. Deputy Abbott adds, "You ain't had money to buy a rock thing," which Guinn says should have been transcribed as rock cocaine. *Id.* Nothing in that exchange, by itself, suggests anything more than a crack pipe being taken from Guinn. It does not show that a "crack rock" was inside the pipe, nor do the FOIA materials support the claim that a "crack rock" was improperly handled and/or given to the informant.

In his state habeas, Guinn claims that Investigator Johnson approached Guinn and the informant outside their residence and, after asking Guinn to talk with them, said, "Let me check you for weapons." Habeas R. at 5. When Johnson asked Guinn what was in his pockets, Guinn said that he emptied his pockets of cigarettes, a lighter, and a chap stick tube. Johnson opened the tube and found a "crack rock" inside, which he dumped in his hand and showed to Deputy Abbott. Johnson allegedly looked at the informant and told Guinn that he was in enough trouble already, then tossed the "crack rock" on the ground in front of the informant,

where presumably the informant was able to pick it up after the officers took Guinn away. *Id.* Nothing in the materials that Guinn has attached to his petition corroborates his description of the events. Accordingly, nothing in the FOIA materials provided him with new facts. If the investigator tossed the piece of crack on the ground in front of the informant, Guinn saw that act at the time it happened in 2011, long before he received the FOIA materials on September 24, 2018.

Guinn's second claim for ineffective assistance of counsel is that counsel failed or refused to subpoena the informant to court, as Guinn had requested. Guinn was in court on the trial date, and obviously knew or should have known if the requested witness was or was not present at the hearing in 2012.

Guinn alleges as his third ineffective-assistance claim that his attorney failed to examine police files and listen to the recording of Guinn's statement to Johnson and Abbott before his arrest. He offers no affidavit from the attorney or anyone else with first-hand knowledge to support the allegation that counsel did not listen to the recording, but he asserts that he had no knowledge of the recording until he received a copy of it in response to his FOIA request. Although he may not have known the recording existed, he knew he had spoken to the police, and he knew he had denied any involvement in the break-in. In other words, the substance of the statement was known to Guinn because he made the statement. He also told his attorney that he spoke to the police. The fact that he made the statement and the substance of the statement would be the factual basis for any legal issues counsel should have investigated before trial, not whether the statement was recorded.

Finally, Guinn asserts that counsel was ineffective for failing to investigate his claim that the informant was the one who burglarized Cox's home and stole her belongings. In his § 2254 petition, Guinn asserts that his attorney refused to investigate. Pet. at 11, ECF No. 1. If counsel refused to investigate what Guinn told him before his court date, Guinn clearly was aware of that fact in 2012.

Because Guinn knew or should have known the facts underlying his claims of ineffective assistance of counsel before his conviction was final, he cannot rely upon subsection (D) to save his untimely claims, and they are time-barred.

2. *Brady* Claims

In *Brady* claims number 1 and number 4, Guinn asserts that the informant received rock cocaine in exchange for information given to police. He alleges that the law enforcement officers mishandled the crack removed from Guinn's person, allowing the informant to have the drug. As discussed above in connection with his first ineffective-assistance-of-counsel claim, none of the materials attached to the habeas petition here (or in state court) supports these allegations. Because nothing in the material Guinn received in September 2018 corroborates the allegation that crack was taken from Guinn and given or made available to an informant, those records cannot provide the factual basis for these untimely claims.

Claims 2, 3, 6, and 8 relate to Guinn's statement to Johnson and Abbott, which was transcribed. Guinn alleges that he did not know the interview had been recorded, that the recording has been altered and incorrectly transcribed, and that none of this was disclosed in discovery. Further, the tape shows that he was not read *Miranda* rights.

Guinn fails to explain how the recording—altered, mistranscribed, or otherwise—would have made any difference in his decision to plead guilty. He denied involvement in the crime, and the audio and transcript reflect this. Whether Guinn knew the interview had been taped does not govern the inquiry. Guinn knew he had spoken to law enforcement officers, and he knew what he had told them. If his lawyer never discussed the substance of his statement to the police, Guinn was certainly aware of that before he pleaded guilty. He knew that he had not been given *Miranda* warnings. The time for him to raise failure to disclose the substance of his statement and any *Miranda* issues was before he decided to plead guilty, not six years after the statute of limitations expired for his federal habeas petition. The core of the factual basis for these claims was known to Guinn before he pleaded guilty, and the FOIA materials provide no basis for a delayed statute of limitations on these issues.

In claim 5, Guinn alleges that his arrest on charges from North Carolina was unlawful and in bad faith because, at the time he was arrested, North Carolina had not transmitted a fugitive warrant. He alleges that he discovered this when he received information from Carteret County Sheriff's Office in North Carolina, in response to his request, asserting that they had no fugitive warrant for him and sending him a copy of an Order of Arrest on indictment for "larceny by employee" dated September 12, 2011, nearly a month after he had been arrested by Johnson and Abbott. He attached a letter from Carteret County dated November 12, 2019, and the Order of Arrest as "Supplemental and Additional Exhibits." ECF No. 5 at 5–6. This cannot be when he learned these facts, however, because he included this claim for unlawful, bad-faith arrest in his state habeas petition, filed October 18, 2018, more than one year before the § 2254 petition was filed, establishing that he knew the factual basis

for this claim more than one year before he filed this federal petition. Therefore, this claim is untimely.

In claim 7, Guinn alleges that the Government violated his due process rights by not having the informant present in court the morning of trial. Guinn knew or should have known when he was in court if the witness was not present, and he had the right to subpoena any witness he wished. He chose to plead guilty, acknowledging verbally and in writing that he knew he was giving up the right to confront and cross-examine the witnesses against him and that he was satisfied with his attorney. Habeas R. at 71–73; CCR at 150–153. Because he knew in 2012 the witness was not present in court on the morning of trial, the factual basis for this claim was known to him years before this petition was filed.

In claim 9, Guinn complains that he was only offered the choice of pleading guilty or not guilty; no one told him he could plead no contest. Further, he said he never intended to and did not plead guilty to the burglary charge once it was amended. This claim is belied by the record, which consistently refers to "these three charges." Both verbally and in writing, Guinn answered "yes" to the questions, "Have you discussed with your lawyer whether you should plead not guilty, nolo contendere or guilty?" and, "After those discussions have you decided for yourself to plead guilty?" CCR at 152; Habeas R. at 71. The court also gave Guinn the opportunity to ask the court questions. This entire colloquy occurred *after* the court amended the caption on the burglary indictment. If Guinn did not understand what he was pleading to or the option to plead *nolo contendere*, which is the same as no contest, that was the time to say so. At a minimum, he knew enough facts that due diligence would have made him fully aware of these issues within the normal statute of limitations. If he truly believed he had

pleaded guilty only to perjury, he certainly knew otherwise at sentencing. Subsection (D) runs the one-year period from when the factual basis is or could have been known with due diligence, not when the facts first appeared legally significant to a petitioner. *Hancock*, 906 F.3d at 390.

For these reasons, none of the *Brady* claims is timely, as Guinn knew—or should have known through the exercise of due diligence—the factual basis for these claims more than one year before he filed his federal petition.

**B.** **Exceptions to the Statute of Limitations**

There are three possible exceptions that would permit Guinn to proceed on an untimely petition: statutory tolling, equitable tolling, or actual innocence. They are addressed in turn.

1. Statutory Tolling

Section 2244(d)(2) tolls the statute of limitations while "a properly filed application for State post-conviction or other collateral review . . . is pending." If Guinn had filed a state habeas petition before the federal statute of limitations expired on July 25, 2014, the time remaining under the statute would have been tolled while the state habeas was pending. However, Guinn did not file a state habeas petition until October 18, 2018, more than four years after the federal statute of limitations had run. Once the federal statute of limitations has expired, the filing of a state petition does not revive the federal claim; the federal claim remains time barred. *Wahl v. Kholi*, 562 U.S. 545, 547 (2011).

2. Equitable Tolling

The United States Supreme Court has recognized a narrow exception for equitable tolling if the petitioner has pursued his rights diligently and some extraordinary circumstances prevented his timely filing. *Holland v. Florida*, 560 U.S. 631, 636, 649 (2010). Guinn has not diligently pursued his rights, nor has he demonstrated any extraordinary circumstances that prevented him from timely filing his federal habeas petition.

The level of diligence required for equitable tolling is "reasonable diligence, not maximum feasible diligence." *Id.* at 653. This is a "fact-intensive and case-specific" inquiry, which requires the court to assess "the reasonableness of a petitioner's actions in the context of his or her particular circumstances." *Lawrence v. Lynch*, 826 F.3d 198, 204 (4th Cir. 2016). Guinn sought no relief from any court until many years after his federal statute of limitations had expired. As discussed previously, the factual basis for most of his federal claims was known to him before he pleaded guilty, so there is no reason he could not have filed a timely petition.

Guinn claims that he did not know or understand the law. The law does not recognize this as an extraordinary circumstance. "Even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Nor are Guinn's understandable concerns about his mother's health extraordinary circumstances that prevented him from filing his petition in a timely manner. Because Guinn has shown neither diligence nor extraordinary circumstances, equitable tolling cannot not save his petition.

3. Actual Innocence

In balancing the "societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case," the Court has recognized a "miscarriage of justice" exception to the statute of limitations when a litigant presents *new* evidence showing that, absent constitutional error, "no reasonable juror would have convicted" the defendant. *McQuiggin v. Perkins*, 569 U.S. 383, 393–95 (2013). A credible claim of actual innocence must be supported by new, reliable evidence, such as exculpatory scientific evidence, critical physical evidence, or trustworthy eyewitness accounts. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). As previously discussed, Guinn has not offered any new facts. And the factual basis for each claim was known to him, or should have been known to him, by the time he was sentenced for his offenses. His petition does not claim "actual innocence" in those words, but he implies that the informant committed the crimes, not him. That contradicts his guilty plea and what he told the police the day before he pleaded guilty. That the informant might also have been guilty does not exonerate Guinn, because his statements to police in 2012 suggested joint action.

In this case, Guinn did not exercise his right to trial, choosing instead to plead guilty to the charges. He had no agreement with the Commonwealth regarding sentencing. Although he may have hoped for credit for cooperation and believed he would get a lower sentence than he got, those are not grounds for setting aside a conviction based on a knowing and voluntary guilty plea. The trial court's colloquy with Guinn established that he knew he could be sentenced up to 50 years for the three offenses;, that he understood the charges; that he was satisfied with his attorney; and that made the decision for himself to plead guilty. CCR at 149–

154. The plea was found to be knowing and voluntary, a factual finding amply supported by the record and which the federal court is obliged to accept unless overcome by clear and convincing evidence. 28 U.S.C. § 2254(e).

Guinn would need to show not only new evidence and a constitutional error, but also reasonable likelihood of an impact on the outcome. In the case of a guilty plea, that means he must demonstrate a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial if the new evidence had been available and the constitutional error alleged had not occurred. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Guinn's subjective representation that he would not have pleaded guilty is insufficient. New evidence would have to make it objectively reasonable for Guinn to risk a trial rather than plead guilty. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Guinn has not made such a showing. He has not offered new evidence, only facts he already knew through a different lens. And he has made no credible showing of any element of an actual innocence claim. Accordingly, the statute of limitations cannot not be excused.

### IV.    Conclusion

For the reasons discussed above, the court will grant the respondent's motion to dismiss the petition as untimely.[4]

Further, when issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of

---

[4] Because the petition is untimely, the court also denies petitioner's motion to amend/correct petition [ECF 33], filed February 19, 2021. The court likewise denies petitioner's motion to hold Respondent's Attorney, Leah Ann Darron, in contempt of court [ECF 30], because counsel has done nothing improper in this case; representing the respondent is her legal duty. Petitioner's motion to withdraw his response in opposition [ECF 38] is dismissed as moot.

appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. *Gonzales v. Thaler*, 565 U.S. 134, 140–41 (2012). Guinn has not made such showings in this case.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to all counsel of record.

**ENTERED** this 12th day of July, 2021.

/s/ *Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE